Exhibit 8

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| FINGERMOTION, INC., | CIVIL ACTION NO. 1:23-cv-09212-JPC |
| *Plaintiff,* | |
| v. | |
| CAPYBARA RESEARCH, JOHN DOES 1-10, | |
| *Defendants,* | |
| and, | |
| WIX.COM, LTD., | |
| *Nominal Defendant.* | |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S *EX PARTE* MOTION TO AMEND THE CASE CAPTION, FOR PERMISSION TO FILE AN AMENDED COMPLAINT AND FOR PERMISSION TO SERVE FOREIGN DEFENDANT VIA ELECTRONIC MAIL**

Submitted By,

Mark R. Basile, Esq.
Waleed Amer, Esq.
**THE BASILE LAW FIRM P.C.**
390 N. Broadway, Suite 140
Jericho, NY 11753
Tel.:   (516) 455-1500
Fax:   (631) 498-0478
Email: mark@thebasilelawfirm.com
          waleed@thebasilelawfirm.com

*Attorneys for Plaintiff FingerMotion, Inc.*

Dated: November 16, 2023

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ...................................................................................................... ii

FACTUAL BACKGROUND ....................................................................................................1

ARGUMENT ...........................................................................................................................6

I. THE DOE DEFENDANT HAS BEEN IDENTIFIED AND PLAINTIFF REQUESTS THAT THE CAPTION BE AMENDED TO REFLECT THE DOE DEFENDANT'S TRUE IDENTITY AND THE DISMISSAL OF NOMINAL DEFENDANT .................................................................................................................6

    A. Pursuant to the Federal Rules of Civil Procedure, Plaintiff Requires the Court's Permission to Amend the Caption to Reflect the True Identity of the Doe Defendant and the Dismissal of Nominal Defendant ....................................................6

II. PLAINTIFF REQUESTS THIS COURT GRANT PERMISSION TO FILE ITS FIRST AMENDED COMPLAINT TO ADD A NEW DEFENDANT, BENZINGA ..........................................................................................................................7

    A. Plaintiff's Amendment Would Not Be Futile .......................................................8

    B. Plaintiff Has Not Unduly Delayed in Bringing This Motion to Amend .................9

    C. Capybara Research and Appelboom Would Not Be Unfairly Prejudiced By Plaintiff Amending Its Complaint .......................................................................10

    D. Plaintiff Has Not Acted In Bad Faith in Bringing this Motion to Amend ............11

III. PLAINTIFF REQUIRES PERMISSION TO SERVE THE FOREIGN DEFENDANT VIA ELECTRONIC MAIL TO FACILITATE THE EFFICIENT RESOLUTION OF THIS MATTER ...............................................................................11

    A. Service of Process on Foreign Individuals in Brazil via Electronic Mail Does Not Violate the Hague Convention ....................................................................12

    B. Service of Process on Foreign Individuals in Brazil via Electronic Mail Does Not Violate the Inter-American Convention .........................................................13

    C. Federal Courts, Including Courts in the Second Circuit, Have Previously Permitted Service of Process on Foreign Individuals in Brazil via Electronic Mail to Prevent Significant Delay in Proceedings ................................................14

    D. Granting Plaintiff Permission to Serve Defendant via Electronic Mail Comports with Due Process as the Email Address Provided to Plaintiff Is Actively Used by Appelboom ................................................................................................16

CONCLUSION .....................................................................................................................17

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases:**

*Aircraft Engine Lease Finance, Inc. v. Plus Ultra Lineas Aereas, S.A.*,
  2021 WL 6621578 (S.D.N.Y. Apr. 23, 2021) .................................................................12, 13

*Allstate Ins. Co. v. Elzanaty*,
  916 F. Supp. 2d, 273 (S.D.N.Y. 2013) ...........................................................................9, 10

*ATMO, LLC v. Bedford Asset Mgmt., LLC*,
  2015 WL 3457452 (S.D.N.Y. June 1, 2015) ...................................................................16, 17

*Dobkin v. Chapman*,
  21 N.Y. 2d 490 (2008) ...........................................................................................................16

*Elcometer Inc. v. TQC-USA, Inc.*,
  2013 WL 592660 (E.D. Mich. Feb. 14, 2013) ........................................................................13

*Elsevier, Inc. v. Chew*,
  287 F. Supp. 3d 374 (S.D.N.Y. 2018) .....................................................................................12

*Equibal, Inc. v. 365 Sun LLC*,
  2023 WL 2870620 (S.D.N.Y., Apr. 10, 2023) ........................................................................12

*Equipav S.A. Pavimentação, Engenharia e Comercia Ltda. v. Bertin*,
  2022 WL 2758417 (S.D.N.Y., July 14, 2022) .............................................12, 13, 14, 15

*Foman v. Davis*,
  371 U.S. 178, 182 (1962) ..........................................................................................................6

*F.T.C. v. PCCare247 Inc.*,
  2013 WL 841037 (S.D.N.Y. Mar. 7, 2013) ............................................................................16

*Grp. One Ltd. v. GTE GmbH*,
  523 F. Supp. 3d 323 (E.D.N.Y. 2021) .....................................................................................12

*Guan v. Lash Princess 56, Inc.*,
  2023 WL 2242050 (S.D.N.Y. Feb. 27, 2023) ..................................................................8, 9, 11

*Integr8 Fuels, Inc. v. OW Bunker Pan. SA*,
  2017 WL 11455309 (S.D.N.Y. Feb. 2, 2017) ..........................................................................13

*In re BRF S.A. Secs. Litig.*,
  2019 WL 257971 (S.D.N.Y. Jan 18, 2023) .............................................................................15

*In re Cattle Antitrust Litig.*,
    2021 WL 7757881 (D. Minn. Sept. 14, 2021) ........................................................................14

*Lyman Morse Boatbuilding Co. v. Lee.*,
    2021 WL 52509 (D. Me. Jan. 6, 2011) ................................................................................15

*Momentum Luggage & Leisure Bags v. Jansport, Inc.*,
    2001 WL 58000 (S.D.N.Y. Jan. 23, 2001) .............................................................................7

*Monahan v. N.Y.C. Dep't. of Corr.*,
    214 F.3d 275 (2d Cir. 2000)................................................................................................10

*OC Glob. Partners, LLC v. Adaime*,
    2022 WL 769328 (S.D.N.Y. Mar. 14, 2022) .......................................................................14

*Randolph-Rand Corp. v. Tidy Handbags, Inc.*,
    2001 WL 1286989 (S.D.N.Y. Oct. 24, 2021) ........................................................................7

*Rotblut v. 333 E. 66th St. Corp.*,
    1996 WL 586353 (S.D.N.Y. Oct. 11, 1996) ..........................................................................8

*RSM Prod. Corp. v. Fridman*,
    2007 WL 1515068 (S.D.N.Y. May 24, 2007) .....................................................................11

*S.E.C. v. Anticevic*,
    2009 WL 361739 (S.D.N.Y. Feb. 13, 2009)........................................................................16

*ShelterZoom Corp. v. Goroshevsky*,
    2020 WL 4252722 (S.D.N.Y. July 23, 2020) ......................................................................12

*United States Securities and Exchange Comm. v. MCC Int'l Corp*,
    2023 WL 5659064 (S.D. Fla. March 8, 2023) .....................................................................14

*Volkswagenwerk Aktiengesellschaft v. Schlunk*,
    486 U.S. 694 (1988)............................................................................................................11

*Wash. State Inv. Bd. v. Odebrecht S.A.*,
    2018 WL 6253877 (S.D.N.Y. Sept. 21, 2018).........................................................12, 14, 15

*Zanghi v. Ritella*,
    2020 WL 6946512 (S.D.N.Y. November 25, 2020) .............................................................17

**Statutes, Rules & Other Authorities:**

Additional Protocol to the Inter-American Convention on Letters Rogatory,
May 8, 1979, S. Treaty Doc. No. 98-27, 53 Fed. Reg. 31,132 (1988).......................................5

CPLR § 308(5)................................................................................................................................2

Fed. R. Civ. P. 4(e)......................................................................................................................16

Fed. R. Civ. P. 4(e)(1)....................................................................................................................2

Fed. R. Civ. P. 4(f).......................................................................................................................16

Fed. R. Civ. P. 4(f)(1)..................................................................................................................11

Fed. R. Civ. P. 4(f)(3)............................................................................................................ *passim*

Fed. R. Civ. P. 12(b)(6)..................................................................................................................8

Fed. R. Civ. P. 15(a)......................................................................................................................7

Fed. R. Civ. P. 15(a)(2)..................................................................................................................6

Fed. R. Civ. P. 21...........................................................................................................................7

Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents
in Civil and Commercial Matters, Nov. 15, 1965, 20 U.S.T. 361 ..................................4, 12, 14

Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents
in Civil and Commercial Matters, Nov. 15, 1965, 20 U.S.T. 361, Art. 8 ..................................4

Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents
in Civil and Commercial Matters, Nov. 15, 1965, 20 U.S.T. 361, Art. 10 ..............4, 12, 13, 18

Inter-American Convention on Letters Rogatory, Jan. 30, 1975 .......................................... *passim*

Plaintiff FingerMotion, Inc. ("FingerMotion," "FNGR" or "Plaintiff") respectfully submits this Memorandum of Law in support of its *Ex Parte* Motion: (i) to amend the caption to replace the Doe Defendants with the true name of the previously unidentified Defendant, Igor Appelboom, and to reflect the dismissal with prejudice of Nominal Defendant Wix.com, Ltd.; (ii) for permission to file its First Amended Complaint to add claims arising out of the same facts and circumstances alleged in the Complaint against a new defendant, Accretive Capital LLC d/b/a Benzinga ("Benzinga"); and (iii) for an Order permitting Plaintiff to serve the newly identified foreign Defendant Igor Appelboom ("Appelboom") its summons and complaint via electronic mail pursuant to Rule 4(f)(3) of the Federal Rules of Civil Procedure on the ground service via electronic mail upon a Brazilian individual would not violate the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil and Commercial Matters and that utilization of traditional methods of service in Brazil would substantially delay the efficient resolution of this matter as fully set forth hereafter.

## FACTUAL BACKGROUND

### *Procedural History*

On October 19, 2023, Plaintiff filed its Complaint against Defendants Capybara Research and John Does 1-10 (together the "Capybara Defendants") and Nominal Defendant Wix.com, Ltd. ("Nominal Defendant" or "Wix") (ECF 1). In its Complaint, Plaintiff alleged claims for securities fraud, tortious interference with prospective business expectancy and defamation against the Capybara Defendants who, on October 3, 2023, posted a defamatory article regarding Plaintiff (the "Capybara Report") on its website. *See* Complaint, ECF 1 at ¶¶ 14-15.

1

The Complaint further claimed Wix was the exclusive custodian of the true identities of the anonymous Capybara Defendants and requested the Court compel Wix to Disclose the Capybara Defendants' identities. *Id*. at ¶ 25.

On October 31, 2023, Plaintiff filed an *Ex Parte* Motion for Permission to Serve the Defendants via Electronic Mail pursuant to Fed. R. Civ. P. 4(e)(1) and New York's CPLR § 308(5) (ECF 9) ("Motion"). On November 6, 2023, the Court entered an Order granting Plaintiff's Motion in part, permitting Plaintiff to serve Capybara Research via email (ECF 10) ("Order"). That same day, Plaintiff filed a Certificate of Service stating Plaintiff's counsel served a copy of the Summons, Complaint and this Court's Order upon Capybara Research via email to capybararesearch@proton.me (ECF 11).

On November 8, 2023, after service of a subpoena upon nominal defendant Wix.com, Wix disclosed information identifying the Doe Defendant to Plaintiff's counsel. On November 9, 2023, Plaintiff filed a Notice of Voluntary Dismissal with Prejudice as to Wix (ECF 12).

<u>*The True Identity of the Doe Defendant*</u>

In its Motion, Plaintiff sought disclosure of identifying information of the individual(s) who owned and operated the website[1] associated with the Twitter account @CapybaraShort ("Capybara Account"). *See* **Exhibit 1**. Pursuant to Wix's disclosure, Plaintiff has ascertained the true name of the Doe Defendant who registered, owns and operates the Capybara Website to be a Brazilian individual named Igor Appelboom. Wix also disclosed Appelboom's address which shows Appelboom resides in Vila Velha, Brazil. Finally, Wix disclosed the email address used to register the Capybara Website domain was igorappelboom@gmail.com. *See* **Exhibit 2**.

---

[1] Wix disclosed the name, address and email address of the individual who registered the website the Capybara Report was published to, https://www.capybararesearch.com/ ("Capybara Website"). *See* Complaint, ECF 1 at ¶¶ 14-15.

Appelboom owns and operates a Twitter account under the handle "@igorappelboom" to which Appelboom writes about his *short selling of various stocks* ("Appelboom Account"). *See* **Exhibit 3**. The content Appelboom posts on the Appelboom Account is of an identical subject matter to the content posted on the Capybara Account and contained in the Capybara Report, the *short selling* of the stock of publicly traded companies. Further, the Google profile for Appelboom's email address, which registered the Capybara Website, shows a profile picture which is ***identical*** to the profile picture of the Appelboom Account, *see* **Exhibit 4** (compare **Exhibit 3**), indisputably linking Appelboom with the Capybara Website.

In comparing the information disclosed by Wix identifying the individual associated with registering the Capybara Website domain (the website publicly associated with the Capybara Account), the name, banner image[2] and subject matter of the posts of the Appelboom Account, and the identical profile pictures for both Appelboom's email address' Google profile and the Appelboom Account, Plaintiff is certain that both Twitter accounts are owned and operated by Appelboom. As such, Plaintiff believes the Capybara Report was indeed authored and published by Appelboom.

<u>*Online Dissemination of the Capybara Report by Benzinga*</u>

On October 3, 2023, an article was published on Benzinga's website[3] entitled *Watching FingerMotion; Capybara Research Issues Short Report On Co Titled "FingerMotion: A Serial Case of Stock Promotion That Will End In Shareholder Dilution. $1 Target."* which spread the defamatory Capybara Report to Benzinga subscribers and users of various brokerage services, such as TD Ameritrade. *See* **Exhibit 5**.

---

[2] The banner image associated with the Appelboom Account is of the Christ the Redeemer statue located in Rio de Janeiro, Brazil. *See* **Exhibit 3**.
[3] The URL of the Capybara Website is https://www.capybararesearch.com/.

The article contained only a link to the Capybara Report on the Capybara Website, indicating the author of the article intended for readers to click the link to read the content of the defamatory Capybara Report. *Id.* at 3. Benzinga's article sparked fervent online discussion, as well as renewed discussion of the Capybara Report, on Twitter, facilitating further dissemination of the defamatory Capybara Report. To date, the article published by Benzinga remains unretracted on its own website and is available for any Benzinga subscriber to view.[4]

*Service of Process on an Individual Residing in Brazil*

On June 1, 2019, the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil and Commercial Matters, Nov. 15, 1965, 20 U.S.T. 361 ("Hague Convention") became effective in Brazil.[5] When enacting the Hague Convention, Brazil objected to Articles 8 and 10, both providing for additional methods of service on defendants in the signatory nation by foreign plaintiffs. Article 8 permits the use of diplomatic or consular agents and Article 10 permits service by mail or an authorized process server.[6]

Because Brazil does not allow for foreign service of process by mail or authorized process server, a foreign plaintiff is required to find a Brazilian attorney to submit a request for service to Brazil's Central Authority on Plaintiff's behalf to begin the arduous process of serving a Brazilian defendant. Once the request is received by the Central Authority, it is processed for compliance, then forwarded to the Superior Court of Justice for formal approval. The Superior Court of Justice then sends the request to a federal judge for execution of service. Whether the request is successful

---

[4] Benzinga News Desk, Watching FingerMotion; Capybara Research Issues Short Report On Co Titled "FingerMotion: A Serial Case of Stock Promotion That Will End In Shareholder Dilution. $1 Target.", Benzinga (Oct. 3, 2023), available at https://www.benzinga.com/news/23/10/35069081/watching-fingermotion-capybara-research-issues-short-report-on-co-titled-fingermotion-a-serial-case (last accessed November 16, 2023).

[5] *See RSM Prod. Corp. v. Fridman*, 2007 WL 1515068 at *1 (S.D.N.Y. May 24, 2007).

[6] *See* Howard A. Newman, *Serving Process in Brazil: Nascent Use of the Hague Convention on the Service Abroad of Documents in Civil or Commercial Matters*, Florida Bar Journal, Vol. 94, No. 5, Page 32, available at https://www.floridabar.org/the-florida-bar-journal/serving-process-in-brazil-nascent-use-of-the-hague-convention-on-the-service-abroad-of-documents-in-civil-or-commercial-matters/ (last accessed November 16, 2023).

or not, the federal judge will inform the Superior Court of its execution. The court then informs the Central Authority, which in turn informs the applicant of the results. It is widely accepted that this method of service can take up to *a year or more* to complete.

In addition to the Hague Convention, the United States and Brazil are also signatories to the Inter-American Convention on Letters Rogatory, Jan. 30, 1975, and the Additional Protocol to the Inter-American Convention on Letters Rogatory, May 8, 1979, S. Treaty Doc. No. 98-27, 53 Fed. Reg. 31,132 (1988) (the "Inter-American Convention"). Under the Inter-American Convention, letters are transmitted through diplomatic channels requesting judicial assistance in the service of foreign individuals or entities from the foreign country's courts. The U.S. Department of State Bureau of Consular Affairs has noted that service by letters rogatory is a time consuming process, also taking up to *a year or more*.[7]

---

[7] *See* U.S. Department of State, *Preparation of Letters Rogatory*, available at https://travel.state.gov/content/travel/en/legal/travel-legal-considerations/internl-judicial-asst/obtaining-evidence/Preparation-Letters-Rogatory.html (last accessed November 16, 2023).

## ARGUMENT

IV. **THE DOE DEFENDANT HAS BEEN IDENTIFIED AND PLAINTIFF REQUESTS THAT THE CAPTION BE AMENDED TO REFLECT THE DOE DEFENDANT'S TRUE IDENTITY AND THE DISMISSAL OF NOMINAL DEFENDANT**

A. **Pursuant to the Federal Rules of Civil Procedure, Plaintiff Requires the Court's Permission to Amend the Caption to Reflect the True Identity of the Doe Defendant and the Dismissal of Nominal Defendant**

Under Fed. R. Civ. P. 15(a)(2), the Court "should freely give leave [to amend] when justice so requires." "Fed. R. Civ. P. 15 provides a party with a vehicle to supplement or amend his or her original pleading to state new facts or claims. Fed. R. Civ. P. 15(a)(2), …, permits a party, with leave of the court, to amend his or her operative pleading at any time prior to trial. Generally, leave to amend should be given "freely . . . when justice so requires." *See Foman v. Davis*, 371 U.S. 178, 182, 83 S. Ct. 227, 9 L. Ed. 2d 222 (1962). Under Fed. R. Civ. P. 15(a)(2), a motion to amend will be denied in the event of "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment." *Id.*

Plaintiff commenced this action by filing its Complaint on October 19, 2023. At the time of filing, the identity of the Doe Defendant who owned and operated the Capybara Website and published the Capybara Report was unknown as the Doe Defendant operated the Capybara Website and Capybara Account anonymously. The identity of the Doe Defendant was in the sole possession of Nominal Defendant. On November 8, 2023, Wix voluntarily disclosed the requested identifying information of the Doe Defendant to Plaintiff's counsel, identifying the Doe Defendant to be Appelboom. On November 9, 2023, Plaintiff filed a Notice of Voluntary Dismissal with Prejudice as to Wix (ECF 12).

Plaintiff's proposed amended complaint does not include additional claims against both Capybara Research or Appelboom. Instead, only the caption would be amended to reflect Plaintiff's identification of the previously unidentified Doe Defendant and Plaintiff's dismissal of Wix. Neither Capybara Research nor Appelboom will be prejudiced by an amendment to the case caption.

Plaintiff has not unduly delayed in bringing its motion to amend its Complaint as this case is still in its infancy. In fact, Plaintiff has only been able to serve one Defendant, Capybara Research, through alternative means as all other potential Defendants were anonymous and unidentified. Plaintiff was only able to ascertain the true identity of the previously anonymous Doe Defendant on November 8, a mere eight days ago, with the assistance of a subpoena compelled disclosure by Wix. As such, Plaintiff has not yet been able to serve its Summons and Complaint on the now-identified Appelboom.

Finally, because Defendants would not be prejudiced by an amendment to the caption and Plaintiff has not unduly delayed in bringing this motion, there can be no colorable claim that Plaintiff has acted in bad faith. Therefore, the Court should grant Plaintiff's motion to amend the caption properly naming Appelboom as a Defendant and reflecting Wix's dismissal from this case.

## V. PLAINTIFF REQUESTS THIS COURT GRANT PERMISSION TO FILE ITS FIRST AMENDED COMPLAINT TO ADD A NEW DEFENDANT, BENZINGA

"Rule 15(a) of the Federal Rules of Civil Procedure generally governs the amendment of complaints. Where the proposed amendment seeks to add new defendants, however, Rule 21 governs." *See Momentum Luggage & Leisure Bags v. Jansport, Inc.*, 2001 WL 58000, at *1 (S.D.N.Y. Jan. 23, 2001); *Randolph-Rand Corp. v. Tidy Handbags, Inc.*, 2001 WL 1286989, *6 (S.D.N.Y. Oct. 24, 2021). Rule 21 of the Federal Rules of Civil Procedure states "[o]n motion or on its own, the court may at any time, on just terms, add or drop a party." Fed. R. Civ. P. 21.

When evaluating a motion for leave to amend a complaint to add a defendant, courts evaluate (i) "whether the amendment to add ... a defendant would be futile ... [i.e., that the complaint as amended] could not withstand a Rule 12(b)(6) motion to dismiss"; (ii) "whether [the plaintiff has] exhibited undue delay in bringing the motion to amend"; (iii) whether the amendment would be unfairly prejudicial, i.e., resulting in undue or substantial prejudice such as "when the nonmoving party shows that it would be fairly disadvantaged or deprived of the opportunity to present facts or evidence that it would have offered"; and (iv) whether the plaintiff has "demonstrated bad faith so that an amendment to the [c]omplaint should be prohibited." *Guan v. Lash Princess 56, Inc.*, 2023 WL 2242050, at *12 (S.D.N.Y. Feb. 27, 2023). Considering these factors, courts should generally permit parties to amend their pleadings to add new parties unless there is evidence of "undue delay, bad faith, dilatory tactics, undue prejudice to the party to be served with the proposed pleading, or futility." *Id.* at *12-13.

## A. Plaintiff's Amendment Would Not Be Futile

"In addressing the proposed futility of an amendment, the proper inquiry is comparable to that required upon a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6)." *Rotblut v. 333 E. 66th St. Corp.*, 1996 WL 586353, *1 (S.D.N.Y. Oct. 11, 1996). "In addressing the proposed futility of an amendment, the proper inquiry is comparable to that required upon a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). With respect to claims alleged to be without merit, the court must construe the facts alleged by the party proposing the amendment as true and view them in the light most favorable to that party." *Id.* at *4.

On November 13, 2023, Plaintiff discovered that Benzinga posted a link to the Capybara Report to its own website, further disseminating the defamatory article to its readers and subscribers. Plaintiff's amended complaint, attached hereto as **Exhibit 6** ("First Amended Complaint"), includes a claim against Benzinga for defamation. Plaintiff's claim for defamation arises out of the same facts and circumstances as the claim for defamation against the Capybara Defendants. Plaintiff believes it has adequately pled its claims against Benzinga in the proposed First Amended Complaint and that claim would survive a motion to dismiss. Therefore, the proposed amendment would not be futile.

### B.  Plaintiff Has Not Unduly Delayed in Bringing This Motion to Amend

Plaintiff has not unduly delayed in bringing its motion to amend its Complaint as this case is still in its infancy. Plaintiff discovered it had a claim against Benzinga relating to the operative facts of this case on November 13, 2023. Plaintiff further has only been able to serve one Defendant, Capybara Research, through alternative means as all other potential Defendants were anonymous and unidentified. Plaintiff was only able to ascertain the true identity of the previously anonymous Doe Defendant on November 8, a mere eight days ago, with the assistance of a subpoena compelled disclosure by Wix. As such, Plaintiff has not yet been able to serve its Summons and Complaint on the now-identified Appelboom.

Further, there has not yet been any discovery in this case. *See Guan*, 2023 WL at *15 (holding when discovery has not yet taken place, "in the cycle of a lawsuit, the case is in its infancy"). Because this case is still in its infancy and discovery has not yet taken place, there can be no colorable claim for delay. *Id. See also Allstate Ins. Co. v. Elzanaty*, 916 F. Supp. 2d, 273, 304 (S.D.N.Y. 2013) (holding that permitting the plaintiff to amend its Complaint would not substantially delay the final disposition of the action as discovery had not been completed by any party).

### C. Capybara Research and Appelboom Would Not Be Unfairly Prejudiced By Plaintiff Amending Its Complaint

In analyzing "prejudice," courts consider whether the amendment would: (i) require the opponent to "expend significant additional resources to conduct discovery and prepare for trial," (ii) significantly prolong the resolution of the action, or (iii) "prevent the plaintiff from bringing a timely action in another jurisdiction." *Monahan v. N.Y.C. Dep't. of Corr.*, 214 F.3d 275, 284 (2d Cir. 2000). The non-moving party will not be prejudiced when discovery is yet to be completed as the non-moving party will have sufficient time and opportunity to present facts or evidence to defend against any additional allegations proposed in an amended complaint. *See Allstate Ins. Co.*, 916 F. Supp at 304.

Plaintiff does not seek to propose any new factual allegations in its proposed amendment against either Capybara Research or Appelboom. Plaintiff instead seeks to amend its Complaint to add a claim against a new party, Benzinga, which arises out of the same or similar operative facts as those alleged in the Complaint. The addition of a new defendant will not require the Defendants to "expend significant additional resources to conduct discovery and prepare for trial" as this case is in its infancy and has not yet reached discovery. Further, the addition of a new defendant will not significantly prolong the resolution of this action as Capybara Research has not yet filed an answer. Because an answer has not yet been filed and discovery has not yet taken place, there is ample opportunity for Defendants to present facts and evidence to defend itself. Therefore, there can be no colorable claim for prejudice.

### D.  Plaintiff Has Not Acted In Bad Faith in Bringing this Motion to Amend

If the Court finds Plaintiff has not unduly delayed in, and has offered a good reason for bringing a motion to amend, Plaintiff cannot be found to have acted in bad faith in bringing its motion to amend.  *See Guan*, 2023 WL at *14-15 (finding no bad faith in the record when the court found the plaintiff had not unduly delayed in bringing its cross-motion to amend and where defendants were not unfairly prejudiced).  Plaintiff believes it has shown good cause for bringing its motion to amend as the amendment would not be futile, Plaintiff has not unduly delayed in bringing its motion to amend, and the addition of Benzinga as a new defendant would not unfairly prejudice either Capybara Research or Appelboom.  Therefore, the Court should not find Plaintiff acted in bad faith and should grant Plaintiff's motion to file its First Amended Complaint.

## VI.  PLAINTIFF REQUIRES PERMISSION TO SERVE THE FOREIGN DEFENDANT VIA ELECTRONIC MAIL TO FACILITATE THE EFFICIENT RESOLUTION OF THIS MATTER

On June 1, 2019, the Hague Convention became effective in Brazil.  *RSM Prod. Corp. v. Fridman*, 2007 WL 1515068 at *1 (S.D.N.Y. May 24, 2007).  Compliance with the Hague Convention is "'mandatory' when serving a defendant who resides in a foreign country that is a signatory to the convention."  *Id.* (quoting *Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 699 (1988)).  Federal Rule of Civil Procedure 4(f)(1) states that service may be made "by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents."  Fed. R. Civ. P. 4(f)(1).

"Unless federal law provides otherwise, an individual—other than a minor, an incompetent person, or a person whose waiver has been filed—may be served at a place not within any judicial district of the United States … by other means not prohibited by international agreement, as the court orders."  Fed. R. Civ. P. 4(f)(3).  "Service of process under Rule 4(f)(3) is neither a last resort

nor extraordinary relief.  It is merely one means among several which enables service of process on an international defendant."  *Elsevier, Inc. v. Chew*, 287 F. Supp. 3d 374, 377 (S.D.N.Y. 2018).  "To obtain the Court's permission to utilize Rule 4(f)(3), plaintiff must show that the facts and circumstances of the present case necessitate district court intervention."  *Wash. State Inv. Bd. v. Odebrecht S.A.,* 2018 WL 6253877, at *4 (S.D.N.Y. Sept. 21, 2018).

Along with the Hague Convention, Brazil is a signatory to the Inter-American Convention on Letters Rogatory ("Inter-American Convention"), another treaty governing service of process.  *Id.* at *5.  Any motion for alternative service must address the applicability of both the Hague Convention and Inter-American Convention and whether the proposed alternative means of service violates either treaty.  *See Equibal, Inc. v. 365 Sun LLC*, 2023 WL 2870620, at *7-8 (S.D.N.Y., Apr. 10, 2023).

### A. Service of Process on Foreign Individuals in Brazil via Electronic Mail Does Not Violate the Hague Convention

Article 10(a) of the Hague Convention states "[p]rovided the State of destination does not object, the present Convention shall not interfere with the freedom to send judicial documents, by postal channels, directly to persons abroad."  While Brazil has objected to Article 10 of the Hague Convention regarding service by mail, "[c]ourts in the Second Circuit have generally found that email is not a postal channel and that service by email is authorized if the signatory country has not explicitly objected to service by electronic means."  *Equipav S.A. Pavimentação, Engenharia e Comercia Ltda. v. Bertin*, 2022 WL 2758417, at *6 (S.D.N.Y., July 14, 2022) (*quoting Grp. One Ltd. v. GTE GmbH*, 523 F. Supp. 3d 323, 343 (E.D.N.Y. 2021).  *See also ShelterZoom Corp. v. Goroshevsky*, 2020 WL 4252722, at *2 (S.D.N.Y. July 23, 2020) ("[N]umerous courts have held that service by email does not violate any international agreement, even when a country objects to Article 10 of the Hague Convention").  *See also Aircraft Engine Lease Finance, Inc. v. Plus Ultra*

12

*Lineas Aereas, S.A.*, 2021 WL 6621578, at *2 (S.D.N.Y. Apr. 23, 2021) ("[T]he Hague Convention does not address service by email, and therefore does not prohibit such service").

The Hague Convention does not address the use of email to serve foreign defendants. Article 10 of the Hague Convention allows for the use of postal channels and authorized process servers to effectuate service on foreign defendants. Brazil's objection to Article 10 forbids the use of postal channels and authorized process servers to effectuate service in Brazil. However, Brazil's objection does not expressly forbid the use of email as the Hague Convention is silent on the use of email to serve a foreign defendant. Courts in the Second Circuit have held that the use of of email to effectuate service does not constitute the use of a postal channel and, therefore, would not violate the Hague Convention.

### B. Service of Process on Foreign Individuals in Brazil via Electronic Mail Does Not Violate the Inter-American Convention

The Inter-American Convention "'merely provides one possible method of service'" via letters rogatory, however "'[i]t is neither [a] mandatory nor exclusive'" method to serve a foreign defendant. *See Equipav*, 2022 WL at *6. "[T]he Inter-American Convention, unlike the Hague Convention, does not purport to provide the exclusive means of effecting service of process between the signatories. *See Integr8 Fuels, Inc. v. OW Bunker Pan. SA*, 2017 WL 11455309, at *5 (S.D.N.Y. Feb. 2, 2017). Service of process under Fed. R. Civ. P. 4(f)(3) by email does not violate the Inter-American Convention. *See Id.* at *5-6 (citing *Elcometer Inc. v. TQC-USA, Inc.*, 2013 WL 592660, at *2 [E.D. Mich. Feb. 14, 2013]) (holding service by email does not violate the Inter-American Convention).

The Inter-American Convention is silent as to service by email. The Inter-American Convention is neither a mandatory nor exclusive method to serve a foreign defendant. Service by email is an alternative means of service not prohibited by either the Hague Convention or Inter-

American Convention and, therefore, pursuant to Fed. R. Civ. P. 4(f)(3) this Court is authorized to permit Plaintiff to serve Appelboom by email.

### C. Federal Courts, Including Courts in the Second Circuit, Have Previously Permitted Service of Process on Foreign Individuals in Brazil via Electronic Mail to Prevent Significant Delay in Proceedings

Federal courts across the country have authorized alternative service on individuals residing in Brazil by email. *See Equipav*, 2022 WL at *3; *United States Securities and Exchange Comm. v. MCC Int'l Corp*, 2023 WL 5659064, at *10 (S.D. Fla. March 8, 2023) ("[t]his [c]ourt thus joins other federal courts around the nation in approving alternative service for a defendant who resides in Brazil"); *In re Cattle Antitrust Litig.*, 2021 WL 7757881, at *17-18 (D. Minn. Sept. 14, 2021) (granting motion for alternative service on a defendant located in Brazil); *Wash. State Inv. Bd.,* 2018 WL at *6-10 (S.D.N.Y. Sept. 21, 2018) (same); *OC Glob. Partners, LLC v. Adaime*, 2022 WL 769328, at *6 (S.D.N.Y. Mar. 14, 2022) (same). It is well established that the average time for affecting service under the Hague Convention and Inter-American Convention upon individuals in Brazil is seven to twelve months. *See Equipav*, 2022 WL at *3; *supra* at fn 6.

Plaintiff believes that service upon Appelboom through both the Hague Convention and Inter-American Convention would be impracticable. Service through Brazil's Central Authority is an arduous process, taking up to a year to complete and without a guarantee that service will be successful.

Further, service pursuant to the Inter-American Convention has been shown to be impracticable. Various federal courts have held that effectuating service via the Inter-American Convention is "complex and is likely to be time consuming" and that there is high likelihood that service would fail. *See In re BRF S.A. Secs. Litig.*, 2019 WL 257971, at *10 (S.D.N.Y. Jan 18, 2023) ("'the letters rogatory process in Brazil . . . involves a multitude of steps,' meaning that service was 'complex and is likely to be time consuming,' potentially requiring 12 to 18 months"); *Wash. State Inv. Bd.*, 2018 WL at *4 (S.D.N.Y., Sept. 21, 2018) (holding affecting service in Brazil through the use of the letters rogatory system "will delay this case for a year to a year-and-a-half"); *Lyman Morse Boatbuilding Co. v. Lee.*, 2021 WL 52509, at *3 (D. Me. Jan. 6, 2011) ("Service of process in Brazil pursuant to [the Inter-American] Convention can take more than three years to complete, and only two of 100 requests for such service since 2003 have been successful").

There is a growing sentiment among federal courts, including courts in this District, to allow plaintiffs to serve defendants residing in Brazil by email. Although Brazil has objected to Article 10 of the Hague Convention, the objection itself does not preclude methods of service which the signatory nation has not explicitly objected to, i.e. email. Courts in the Second Circuit have held that transmission of service of process by email does not make use of postal channels. *See Equipav*, 2022 WL at *6. Should this Court deny Plaintiff's motion to serve Appelboom by email, the resolution of this matter could be delayed by over a year. Because this Court is authorized to permit Plaintiff to serve Appelboom by email, in the interest of judicial economy and the efficient resolution of this matter, Plaintiff's motion to serve Appelboom via email should be granted.

### D. Granting Plaintiff Permission to Serve Defendant via Electronic Mail Comports with Due Process as the Email Address Provided to Plaintiff Is Actively Used by Appelboom

In determining whether an alternative method of service is proper, the Court has an obligation to ensure that Plaintiff's proposed method of service comports with due process, which "require[s] that any means of service be reasonably calculated, under all circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *F.T.C. v. PCCare247 Inc.*, 2013 WL 841037, at *4 (S.D.N.Y. Mar. 7, 2013). "Service by email alone comports with due process where a plaintiff demonstrates that the email is likely to reach the defendant." *See ATMO, LLC v. Bedford Asset Mgmt., LLC*, 2015 WL 3457452, at *9 (S.D.N.Y. June 1, 2015) (Holding courts can approve of service by email if the email address is indisputably connected with the defendant and the account is active and has been recently used); *Dobkin v. Chapman*, 21 N.Y. 2d 490, 498 (2008) (In devising appropriate forms of alternate service, courts have wide latitude to "fashion . . . means adapted to the particular facts of the case before it"). "A plaintiff is not required to attempt service through the other provisions of Rule 4(f) before the Court may order service pursuant to Rule 4(f)(3)." *S.E.C. v. Anticevic*, 2009 WL 361739, at *3 (S.D.N.Y. Feb. 13, 2009).

This Court has previously granted Plaintiff's motion to serve Capybara Research by email, finding that Plaintiff showed that other means of service were impracticable, and Plaintiff's proposed email service comported with due process. *See* ECF 10, Order at 2. Although Plaintiff was required to show diligent attempts to locate and serve Capybara Research pursuant to Fed. R. Civ. P. 4(e), Plaintiff is not required to show it previously attempted to serve the foreign individual Appelboom pursuant to other means provided in Fed. R. Civ. P. 4(f). *See Anticevic*, 2009 WL at *3.

16

Service upon Appelboom via email will comport with due process.  It is indisputable that the email address is connected to both Appelboom and Capybara Research as (i) the email address contains Appelboom's full name, (ii) the email address was used to register the Capybara Website and (iii) the profile picture for both the email address' Google profile and the Appelboom Account are identical.  It is further indisputable that Appelboom actively uses the igorappelboom@gmail.com address as Appelboom used the address to register the Capybara Website in July 2023.  *See ATMO, LLC*, 2015 WL at *9. *See also Zanghi v. Ritella*, 2020 WL 6946512 at *9 (S.D.N.Y. November 25, 2020) (granting plaintiff leave to serve defendant via email after finding there was evidence that the defendant used the email address within the last year).  As such, it is highly likely that an email sent to the igorappelboom@gmail.com address will reach Appelboom.

Therefore, Plaintiff requests this Court grant permission to serve Appelboom its summons and complaint via email pursuant to Fed. R. Civ. P. 4(f)(3).

## CONCLUSION

Plaintiff believes it has shown good cause for bringing its motion to amend as the amendment would not be futile, Plaintiff has not unduly delayed in bringing its motion to amend, and the addition of Benzinga as a defendant would not unfairly prejudice either Capybara Research or Appelboom.  Plaintiff has demonstrated it has not acted in bad faith and the Court should grant Plaintiff's motion to amend.

Under Rule 4(f)(3), a court may order alternate service if the proposed method of service: (1) does not violate any international agreement; and (2) comports with due process.  It is well-established that a plaintiff is not required to attempt service through diplomatic means before the Court may order alternate service under Rule 4(f)(3).  The proposed alternative method of service

by email (1) does not violate Brazil's objection to Article 10 of the Hague Convention; (2) is permitted by the Inter-American Convention; and (3) is reasonably calculated to provide Appelboom with notice of this action. Moreover, service under both the Hague Convention and the Inter-American Convention is unduly burdensome, expensive, and will unnecessarily delay the resolution of this action. As such, Plaintiff has demonstrated the need to serve Appelboom via email.

For the reasons stated herein, Plaintiff's motion should be granted, the Court should authorize Plaintiff to file its First Amended Complaint annexed hereto as **Exhibit 6**, the Court should order the clerk of the court to accept a summons in the form annexed hereto as **Exhibit 7**, and authorize Plaintiff to serve said summons and First Amended Complaint via email to igorappelboom@gmail.com.